**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | **FOR PUBLICATION** |
| | : | |
| PARTSEARCH TECHNOLOGIES, INC., | : | Chapter 11 |
| | : | Case No. 11-10282 (MG) |
| | : | |
| Debtor. | : | |

---------------------------------------------------------------x

| | | |
|---|---|---|
| CRAIG WENZEL on behalf of himself and all | : | |
| others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Pro. No. 11-01445 (MG) |
| v. | : | |
| | : | |
| PARTSEARCH TECHNOLOGIES, INC. | : | |
| and the Official Committee of Unsecured | : | |
| Creditors, as Intervenor, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------------x

**MEMORANDUM OPINION APPROVING SETTLEMENT AGREEMENT BETWEEN
DEFENDANTS AND SETTLEMENT CLASS ON A FINAL BASIS**

*A P P E A R A N C E S:*

BROWN RUDNICK LLP
*Attorneys for Partsearch Technologies, Inc.*
7 Times Square
New York, New York 10036
By:    William R. Baldiga, Esq.
         Caleb B. Piron, Esq.

HALPERIN BATTAGLIA & RAICHT, LLP
*Attorneys for the Official Committee of Unsecured Creditors*
555 Madison Avenue, 9th Floor
New York, New York 10022
By:    Walter Benzija, Esq.

LANKENAU & MILLER, LLP
*Attorneys for the Plaintiff and the Settlement Class*
132 Nassau Street, Suite 423
New York, New York 10038
By:    Stuart J. Miller, Esq.

-and-

THE GARDNER FIRM, P.C.
*Attorneys for the Plaintiff and the Settlement Class*
210 South Washington Avenue
Post Office Drawer 3103
Mobile, Alabama 36652
By:   Mary E. Olsen, Esq.
       M. Vance McCrary, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       This motion seeking approval of a settlement of a class action suit (the "Motion") comes before the Court after Craig Wenzel (the "Plaintiff") initiated a putative class action adversary proceeding on behalf of himself and other similarly situated employees (collectively, the "Settlement Class" or "Class Members") of Partsearch Technologies, Inc. (the "Debtor").  The Motion is a joint motion on behalf of the Plaintiff, the Debtor and the Official Committee of Unsecured Creditors (the "Committee" and with the Debtor, collectively the "Defendants")[1] seeking final approval of the Settlement (defined below) reached between the Settlement Class and the Defendants, including an award of attorneys' fees for Class Counsel (defined below). Previously, after notice was provided to parties-in-interest and a hearing was held on May 5, 2011 (the "Preliminary Hearing"), the Court entered an order (i) preliminarily approving the Settlement, (ii) approving the form and manner of notice; (iii) scheduling a fairness hearing to consider final approval of the Settlement (the "Fairness Hearing"); and (iv) granting related relief (collectively, the "Preliminary Order").  (ECF Doc. # 21.)[2]  Stuart J. Miller, counsel for the Class Members, has also filed a declaration in further support of the Settlement, including final

---

[1]      The Debtor was the initial named defendant in the above-referenced adversary proceeding.  By entry of an order of the Court, the Committee was subsequently permitted to intervene as a defendant.  (ECF Doc. # 17.)

[2]      Unless otherwise indicated, ECF citations throughout this Opinion refer to the docket in the Adversary Proceeding, Adv. Pro. No. 11-01445 (MG).

approval of attorneys' fees (the "Miller Declaration"). (ECF Doc. # 23.) In addition, the Debtor

has submitted the declaration of Lawton W. Bloom, the Debtor's Chief Restructuring Officer, in

support of the Settlement (the "Bloom Declaration"). (ECF Doc. # 16.) No objections were

filed to the Motion requesting approval of the Settlement on a final basis. No putative class

member has opted-out of the Settlement.

For the reasons explained below, the Settlement is approved on a final basis, including

the award of attorneys' fees to Class Counsel.

## I.  BACKGROUND

The Debtor, established in 2000, was a one-stop shop for electronic and appliance parts,

offering repair technicians and consumers a means of finding parts for common items such as

computers and wireless products. The Debtor also contracted with major retailers to offer

customer support services and maintained multiple co-branded websites with various retailers in

addition to its own business-to-consumer website. The Debtor maintained its headquarters in

New York, New York and had an office in Kingston, New York where its finance and customer

services departments were located. On January 27, 2011, the Debtor filed a voluntary petition

under chapter 11 of the Bankruptcy Code. Subsequently, on March 28, 2011, the Court

approved a sale of substantially all of the Debtor's assets to Best Buy Co., Inc. ("Best Buy").

A class action complaint was filed against the Debtor in the bankruptcy court on February

7, 2011 initiating the instant action (the "Initial Complaint"). (ECF Doc. # 1.) On February 10,

2011, the Initial Complaint was amended (the "Amended Complaint"). (ECF Doc. # 3.) The

Amended Complaint asserts claims under the federal Worker Adjusted and Retraining

Notification Act (the "Federal WARN Act") and the New York State Worker Adjustment and

Retraining Notification Act (the "NY WARN Act" and with the Federal WARN Act,

collectively, the "WARN Act") and seeks, for each Class Member, an allowed priority wage

claim against the Debtor equal to sixty days' pay and benefits.[3]  On February 25, 2011, the

Debtor filed an answer to the Amended Complaint (the "Answer"), denying the material

allegations and asserting various affirmative defenses.  (ECF Doc. # 4.)

The Federal WARN Act is codified at 29 U.S.C. §§ 2101–2109 (2006).[4]  In general

terms, it requires employers with more than one-hundred employees to provide sixty calendar

days' advance notice of a "plant closing" or "mass layoffs" (as both terms are defined in 29

U.S.C. § 2101(a)).  There are three exceptions to the full sixty day requirement; however,

employers must still provide notice as soon as practicable.  *See* 29 U.S.C. § 2102(b)(3).  The

exceptions are: (1) when an employer is actively seeking capital or business and reasonably

believes that advance notice would preclude its ability to garner capital or business (known as

the "faltering company" exception); (2) unforeseeable business circumstances; and (3) natural

disasters.  *See id.* §§ 2102(b)(1)–(2).  When section 2102 is violated, the employer is liable for

damages, including employee back pay and benefits under an employee benefit plan.  *See id.* §

2104.

Under the settlement agreement, annexed to the Motion as Exhibit 1 (the "Settlement"),

the Settlement Class is comprised of all the Debtor's employees who:

> (A) were employed at the Debtor's facility located at 204 Enterprise Drive,
> Kingston, New York 12401 and Debtor's facility located at 360 Park
> Avenue South, New York, New York (the "Affected Facilities," each an
> "Affected Facility"); (B) suffered an "employment loss," as defined in 20
> C.F.R. § 639.3(f), up to thirty (30) days before November 2, 2010, as part of
> a "plant closing" or "mass layoff," as those terms are defined in 29 U.S.C. §
> 2101(a) and 20 C.F.R. § 639.3, at an Affected Facility; (C) meet the
> definition of "affected employees" in 29 U.S.C. § 2101(a)(5) and 20 C.F.R.
> § 639.3(e); (D) [] were not provided sixty (60) calendar-day notice of such

---

[3]      In November 2010, the Plaintiff filed a class action complaint in the United States District Court for the Southern District of New York (the "District Court").  (Motion ¶ 9.)  However, that action was voluntarily dismissed without prejudice.  (*Id.* ¶ 12.)

[4]      The NY WARN Act is found at N.Y. Lab. Law §§ 860 *et seq.* (McKinney 2011).

4

"employment loss;" and (E) [] do not file a timely request to opt out of the Class.

(Settlement ¶ 2.)  The Debtor submits that all individual Class Members fall within parts (A) through (D) above.  (*Id.*)

Additionally, pursuant to the Settlement, the Debtor shall pay $183,000.00 as follows: (1) $2,500.00 to the Plaintiff as the class representative; (2) $135,375.00 to be divided among the Class Members in the amounts set forth in Exhibit A to the Motion;[5] and (3) $45,125.00 in attorneys' fees to counsel for the Class Members.[6]  (*Id.* ¶ 5.)  The Settlement will also result in the release of the Defendants and their professionals, employees and affiliates (among others) from liability.  (*Id.* ¶ 6.)  However, the Settlement will not be binding on any Class Member that opts-out of the Settlement (a "Nonparticipant").  (*Id.* ¶ 11.)  Moreover, if an individual opts-out of the Settlement, then the Debtor may elect to revoke the Settlement without recourse of any type unless the Nonparticipant(s) deliver a written release to the Debtor within seven days after the decision to opt-out.  (*Id.* ¶ 10.)

## II.  DISCUSSION

### A.  Class Certification and Notice

#### 1.  Rule 23(a) of the Federal Rules of Civil Procedure

The Court preliminarily certified the Settlement Class for settlement purposes only and approved a notice that was sent to all Class Members advising them of their ability to opt-out of the Settlement (the "Notice").  (Motion, Ex. 2.)  Based on the following, the Court confirms its prior conclusions.

---

[5]    The Debtor calculated individual Class Member settlement amounts by allocating $135,375 on a pro rata basis based on five days' pay for each of the Class Members.  (*Id.* ¶ 5 n.4.)  The settlement amounts for each Class Member vary from $311.09 to $3,094.32.  (*Id.*, Ex. A.)

[6]    Under the terms of the Settlement, the award of attorneys' fees was subject Court approval.  (Settlement ¶ 5 n.5; Prelim. Order, at p. 3.)  In the event the Court reduces the amount payable to Class Counsel, those funds will be distributed pro rata among the Class Members.  (Settlement ¶ 5 n.5.)

Class actions are governed by Federal Rule of Civil Procedure ("Rule") 23, which applies in bankruptcy court through Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7023. *See* FED. R. BANKR. P. 7023. Rule 23 establishes four prerequisites that must be satisfied in order for a class action proceeding to go forward:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

A court may certify a class for settlement purposes only. *See In re Worldcom, Inc.*, 347 B.R. 123, 141 (Bankr. S.D.N.Y. 2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997)). The Court now turns to the requirements of Rule 23 and finds the structure of the Settlement Class to be appropriate.

As to the numerosity prong embodied in Rule 23(a)(1), there are 192 former employees that comprise the Settlement Class. Rule 23(a)(1) does not mandate that joinder must be impossible. *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029(CM), 2011 WL 1345041, at *4 (S.D.N.Y. Mar. 30, 2011) (citing *Grimmer v. Lord, Day & Lord*, 937 F. Supp. 255 (S.D.N.Y. 1996)). Nor must class action plaintiffs specify the exact size of the class as a prerequisite to satisfying the numerosity requirement. *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204 (E.D.N.Y. 2005). In the Second Circuit, courts presume that joinder is impracticable when the prospective class consists of forty or more members. *Robidoux v. Celani*, 987 F.2d 931, 935–36 (2d Cir. 1993); *Guippone*, 2011 WL 1345041, at *4; *see also* 7A Wright, Miller & Kane, FED. PRACTICE AND PROCEDURE § 1762 (3d ed. 2005). Here, the

6

Settlement Class, made up of 192 former employees, is sufficiently large to make joinder of each class member impracticable.

With respect to commonality, the Court finds that common questions of law and fact exist between the Plaintiff and the Class Members.  Rule 23(a)(2) does not require that all of the questions of law and fact raised by the dispute be completely common among class claimants. *Id.* § 1763; *see also Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).  Rather, Rule 23(a)(2) can be satisfied if there is a single issue common to all class members.  *See D'Alauro v. GC Servs.*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).  But the "critical inquiry is whether the common questions are at the 'core' of the cause of action alleged." *Id.* (citation omitted).  "Minor factual differences will not preclude class certification if there is a common issue of law." *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999) (citations omitted). Recently, on the subject of commonality, the Supreme Court noted that "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, ---S.Ct.---, 2011 WL 2437013, at *7 (U.S. June 20, 2011) (citation and internal quotation marks omitted).

The commonality requirement is clearly met in this case.  The Court would need to adjudicate whether the Class Members were all subject to the same purported "plant closing" or "mass layoff" and whether a sufficient number of employees suffered an "employment loss" to trigger the notice requirements under the WARN Act.  *See* 29 U.S.C. §§ 2101–02; N.Y. LAB. LAW § 860-b; *see also Campbell v. A-P-A Transp. Corp.*, No. 02-3480(WGB), 2005 U.S. Dist. LEXIS 28122, at *10 (D.N.J. Nov. 16, 2005) (finding that a proposed class consisting of 527 employees who asserted claims under the WARN Act satisfied the commonality requirement of

7

Rule 23 because the named plaintiff and the proposed class had a common legal question whether the defendant employer complied with the WARN Act's notice requirements). Moreover, the claims of each Class Member would be subject to the same affirmative defenses raised by the Debtor in its Answer to the Amended Complaint, including whether the Debtor suffered unforeseeable business circumstances (a factual inquiry as noted by Debtor's counsel at the Fairness Hearing). Lastly, a factual question also arises whether each Class Member is entitled to sixty days' wages and benefits—the amount of damages sought in the Amended Complaint. It appears that the only distinct issue among the Class Members is each individual's rate of pay and benefits—as that would alter the damages claim for each Class Member. However, courts have recognized that "[t]he fact that class members suffered different damages is no bar to class certification." *Guippone*, 2011 WL 1345041, at *5. Indeed, "[w]here each member had different degrees of injury or even where defenses might exist only as to particular individuals, commonality has been found for class certification." *Id*.

As to the typicality prong, the Second Circuit has held that "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes the same legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974)); *see also In re Oxford Health Plans*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000). Here, the Court is satisfied that the typicality requirement has been met. All Class Members were employees of the Debtor and were subjected to the same course of events that resulted in the termination of their employment. *See In re Taylor Bean & Whitaker Mortg. Corp.*, No. 3:09-bk-07047-JAF, 2010 WL 4025873, at *6 (Bankr. M.D. Fla. Sept. 27, 2010) (finding that the typicality requirement of Rule 23(a)(3) was satisfied because the plaintiff "suffered the same type of injury as the rest of the class" and the

debtor defendant's "alleged failure to comply with the requirements of the WARN Act

represent[ed] a single course of conduct with regard to each potential class member").

Moreover, all Class Members rely on the same legal theory—the WARN Act—to prove that they

are entitled to damages.  (Amended Complaint ¶¶ 22–32.)

   Lastly, the Plaintiff, as the class representative, will fairly and adequately protect the

interests of the class.  *See* FED. R. CIV. P. 23(a)(4).  What constitutes adequate representation is a

question of fact that depends on the circumstances of each case and is within the discretion of the

court.  *See* 7A Wright, Miller & Kane, FED. PRACTICE AND PROCEDURE § 1765.  The named

representative must be a member of the class; however, there is no requirement that the

representative have express authority from the class members.  *See id.*  Class representatives

must protect the rights of other class members by prosecuting the action, *see id.* § 1766, and

courts may consider the "honesty and trustworthiness of the named plaintiff."  *Savino v.

Computer Credit Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).  Class representatives cannot hold an

interest in conflict with the class.  *See In re Flight Safety Techs., Inc. Sec. Litig.*, 231 F.R.D. 124,

128 (D. Conn. 2005); *see also* 7A Wright, Miller & Kane, FED. PRACTICE AND PROCEDURE §

1768.  Courts also examine the quality and experience of the class attorneys.  *See Flight Safety

Techs., Inc.*, 231 F.R.D. at 128; *Guippone*, 2011 WL 1345041, at *6 (noting that a court's

analysis under Rule 23(a)(4) involves a two steps process:  (i) the court must determine whether

the named class representatives do not have a conflict of interest with the class they seek to

represent and (ii) the class must be represented by qualified counsel).

   In this case, it appears that the Plaintiff has diligently prosecuted this action.  The

Plaintiff engaged counsel to file the initial action in the District Court and now the instant action

before this Court.  It also appears that the Plaintiff does not hold an interest that is adverse to the

Class Members.  The Plaintiff, like the other Class Members, was a former employee of the

Debtor and does not appear to have an ulterior motive for bringing the action. *See Taylor Bean & Whitaker*, 2010 WL 4025873, at * 7. Additionally, Lankenau & Miller, LLP and The Gardner Firm, PC (collectively, the "Class Counsel") are experienced in WARN Act class action litigation. These two firms have handled over one-hundred WARN class action suits. (Miller Decl. ¶¶ 17–24, Ex. 1.)

### 2. Rule 23(b)(3)

In addition to Rule 23(a), a purported class action must fall within one of the three types of class actions contained in Rule 23(b). In this case, the Defendants and Class Counsel submit that the Settlement Class falls under Rule 23(b)(3). Pursuant to Rule 23(b)(3), a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or understandability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

Under Rule 23(b)(3), "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (internal quotation marks omitted) (quoting *Moore v.*

*PaineWebber, Inc.*, 306 F.3d 1247, 1252–53 (2d Cir. 2002)).  Additionally, class resolution must

be "superior to other methods."  *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec.*

*Litig.)*, 471 F.3d 24, 32 (2d Cir. 2006) (citation omitted); *see also Amchem*, 521 U.S. at 615.

Together, the "predominance" and "superiority" requirements ensure that a class will only be

certified when it would "achieve economies of time, effort, and expense, and promote . . .

uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or

bringing about other undesirable results."  *Amchem*, 521 U.S. at 615 (citation and internal

quotation marks omitted).

The Settlement Class is suited to proceed as a class under Rule 23(b)(3).  For the reasons

previously discussed, questions of law or fact common to the Settlement Class predominate over

questions affecting only individual members.  The action involves 192 claimants who are

asserting claims based on common facts and under the same legal theory.  *See Taylor Bean &*

*Whitaker*, 2010 WL 4025873, at * 8 ("[T]he Court finds that the predominant issue in this case

clearly is whether [the debtor's] actions violated the WARN Act.").  The Debtor even concedes

in the Settlement that all of the Class Members were subject to the same circumstances

surrounding their termination.  (Settlement ¶ 2.)  The Settlement Class is also superior to other

methods of resolving the controversy because individually adjudicating each of these

substantially similar claims would be impracticable and consume significant judicial resources.

*See In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366, 386 (S.D.N.Y. 2010).

Moreover, proceeding individually would likely be impractical for individual members because

each holds a relatively small claim.  In such circumstances, as with those before the Court, "the

class action device is frequently superior to individual actions."  *Seijas v. Republic of Argentina*,

606 F.3d 53, 58 (2d Cir. 2010).

The factors enumerated in Rule 23(b)(3)(A)–(D) also support certification.  First, it appears that no Class Member has an interest in individually controlling the prosecution of this case.  All Class Members will simply receive their individual settlement amounts, unless they decide to opt-out.[7]  Second, it does not appear that litigation concerning the WARN Act rights of any Class Member has already begun in a different forum.  And third, for the reasons discussed with respect to predominance and superiority, it is desirous to concentrate all of the Class Members' claims before the Court.[8]

### 3.  Notice

Rule 23(e)(1) provides that the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  FED. R. CIV. P. 23(e)(1).  Rule 23(c)(2)(B), in turn, governs notice requirements for Rule 23(b)(3) classes:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
> (i)    The nature of the action;
>
> (ii)   The definition of the class certified;
>
> (iii)  The class claims, issues, or defenses;
>
> (iv)   That a class member may enter an appearance through an attorney if the member so desires;
>
> (v)    That the court will exclude from the class any member who requests exclusion;
>
> (vi)   The time and manner for requesting exclusion; and
>
> (vii)  The binding effect of a class judgment on members under Rule 23(c)(3).

---

[7]    As already indicated, no class members opted out of the Settlement.

[8]    The fourth factor enumerated in Rule 23(b)(3)(D)—the difficulties of managing a class action—does not need to be considered when certifying a class for settlement purposes, because "the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620; *see also Worldcom*, 347 B.R. at 142–43.

FED. R. CIV. P. 23(c)(2)(B).

In terms of the *form* of notice, "[t]he notice need not be highly specific," and courts have approved very general descriptions of a proposed settlement under the theory that "notices to class members can practicably contain only a limited amount of information." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997) (internal quotation marks omitted) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982), *aff'd*, 117 F.3d 721 (2d Cir. 1997)).  Courts have found notice to be deficient when it does not advise a potential claimant of its recovery.  *See Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 94 (S.D.N.Y. 2007).  In this case, the Notice complies with all of the requirements of Rule 23(c)(2)(B).  Importantly, the Notice includes each Class Member's projected recovery under the Settlement. (Notice ¶ 11.)

As for the *manner* of notice, due process requires that "notice [be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  In this case, the parties mailed the Notice by first class mail, postage prepaid, to the last known address of each Class Member, as reflected in the Debtor's records. (Motion ¶ 35; Miller Decl. ¶ 12.)  The parties previously submitted that the mailing would be timed so that each Class Member had at least thirty days from the mailing date to opt-out, object to the Settlement, and/or appear by counsel at the fairness hearing.  If any envelope was returned, Class Counsel asserted that it would attempt re-delivery to an address obtained from a national database to which Class Counsel subscribes.  (Motion ¶ 36.)  The proposed manner of notice appears to be appropriate.  The Debtor's records and the possible use of a national database for returned envelopes are reasonable means of identifying the addresses of the Class Members.  Moreover, since the Notice was sent to *each* Class Member by mail, the Court is satisfied that

13

Class Members received the best notice practicable under Rule 23(c)(2)(B). *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

### B. Fairness

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. P'Ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). Procedurally speaking, court review of a proposed class action settlement is subject to two steps. First, the settlement must be preliminarily approved by the court. *Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 87. Once the court preliminarily approves the settlement, "it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *Id.*; *see also* FED. R. CIV. P. 23(e)(1). After the court directs notice, class members will have an opportunity to "present their views of the proposed settlement," including the ability to present evidence for or against the terms of the proposed settlement prior to the court deciding whether the settlement is fair, reasonable and adequate. *Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 87. At the Preliminary Hearing, the Court determined that the Settlement Class should be preliminarily certified for settlement purposes, notice of the Settlement should be sent to all Class Members and a fairness hearing should be set for the Court to consider approval of the Settlement on a final basis. (Hr'g. Tr. 15–16, May 4, 2011.)

In order for a class action settlement to be approved in bankruptcy court, the settlement must be *both* procedurally and substantively fair under Rule 23 and Bankruptcy Rule 9019. *See WorldCom*, 347 B.R. at 143–49. This process requires the Court to assess the fairness of a settlement by examining its terms and the negotiation process leading to settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

## 1. Procedural Fairness Under Rule 23 and Bankruptcy Rule 9019

Both Rule 23 and Bankruptcy Rule 9019 require the court to assess whether a proposed settlement is free from collusion and inadequate representation. *See WorldCom*, 347 B.R. at 143. The compromise must be the result of arms-length negotiations among the parties. *See Weinberger*, 698 F.2d at 74. A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation and internal quotation marks omitted); *see PaineWebber*, 171 F.R.D. at 125. The record indicates that the Settlement was the process of arms-length negotiations between the parties. As evidenced by the pretrial conference held before the Court on March 15, 2011 and in subsequent pleadings, both parties are represented by experienced and capable counsel. The parties also had the opportunity to exchange discovery informally in order to investigate the strengths and weaknesses of the assertions contained in both the Amended Complaint and the Answer. (Motion ¶¶ 27–28; Miller Decl. ¶ 10.) The parties also represented that they worked together to resolve this matter (Motion ¶ 51) and no party-in-interest has challenged the nature of the parties' negotiations.

## 2. Substantive Fairness Under Rule 23

Under Rule 23(e), a class action shall not be dismissed or compromised without approval of the court. *See* FED. R. CIV. P. 23(e). Final approval of a settlement under Rule 23(e) requires the court to determine that the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *see also Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983); *Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 87. In the Second Circuit, the substantive reasonableness of a settlement is determined by application of several factors. *See Mba v. World Airways, Inc.*, 369 Fed. App'x. 194, 197 (2d Cir. 2010). These factors are:

15

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted).

The Court now considers each of the *Grinnell* factors:

### a.  The Complexity, Expense and Likely Duration of Litigation

In this case, litigating this matter would no doubt be very costly and necessitate a trial before the Court.  The Settlement provides an expeditious route to recovery for the Class Members, as litigation, by its nature, is uncertain and capping risk exposure is a prudent course of action.  If the matter were to proceed to trial and the Debtor found liable, the Debtor could potentially be subject to a priority claim of close to $1.1 million.  (Motion ¶ 51.)  The Settlement eliminates the foregoing uncertainty and caps the Debtor's liability at 17% of its total potential liability.  (*Id.*)  Likewise, the Class Members could receive nothing if the Debtor prevailed on its defenses and/or opposition to class certification.  (*Id.*)  Therefore, it is reasonable for the Class Members "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and internal quotation marks omitted).

### b.  Reaction to the Settlement

The fairness of a proposed settlement can also be measured by class reaction.  *See, e.g.*, *Worldcom*, 347 B.R. at 145.  For example, "the absence of objectants may itself be taken as evidencing the fairness of a settlement."  *Weiss v. Drew Nat'l Corp.*, 465 F. Supp. 548, 551 (S.D.N.Y. 1979) (citations omitted); *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y.

16

1988); *see also Wal-Mart Stores*, 396 F.3d at 119 ("[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry."); *Marisol A. v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y. 1999).  Here, not a single Class Member opted-out of the Settlement and no objections to the Settlement were filed.

### c.  The Stage of the Proceedings and the Amount of Discovery Completed

The purpose of this factor is to assess "the parties' knowledge and awareness of the relative strength or weakness of each party's respective arguments and positions.  The progression of discovery is a useful proxy through which to measure that knowledge and awareness." *Worldcom*, 347 B.R. at 145.  Here, the Settlement was reached as a result of extensive negotiations between the parties after informal discovery was exchanged—giving both sides the ability to adequately assess their chances of succeeding on the merits.  (Motion ¶¶ 27– 28.)  The fact that the parties were represented by capable and experienced counsel further indicates that each side had sufficient opportunity to understand the underlying factual issues.

### d.  Risks of Prevailing (Establishing Liability, Establishing Damages and Maintaining the Class Through Trial)

Each subcomponent of this factor (indicated in the above parenthetical) is addressed independently under *Grinnell.*  495 F.2d at 463.  However, the Second Circuit has combined the subcomponents to collectively assess the plaintiffs' risks of prevailing on the class action suit. *See Wal-Mart Stores*, 396 F.3d at 118.  The Class Members may find it difficult to establish liability because they must both (i) establish that all of the elements of a WARN Act claim are met, and (ii) overcome the Debtor's affirmative defenses.  In the Answer, the Debtor raised twenty-one affirmative defenses including the unforeseeable business exception, *see* 29 U.S.C. §

2102(b)(2)(A),[9] and the faltering business exception under 29 U.S.C. § 2102(b)(1).[10]  The

Debtors also raised affirmative defenses, such as good faith, *see* 29 U.S.C. § 2104(a)(2), and

wages already paid, *see id.* § 2104(a)(4), that could reduce potential damages but not fully

preclude WARN Act liability.  Given these defenses, even if the action did go to trial and the

Class Members established Debtor liability, the Class Members may experience difficulty

proving significant damages.  In other contexts, courts have found overall damages to be

minimal despite a class's success in proving liability.  *See In re NASDAQ Market-Makers*

*Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) (antitrust class action); *In re Initial Pub.*

*Offerings Sec. Litig.*, 671 F. Supp. 2d 467, 482 (S.D.N.Y. 2009) (securities class action).

Moreover, although the Court has certified the Settlement Class on a final basis, it is not

completely certain whether the class would remain certified for trial.  Since none of the parties

have offered evidence demonstrating a risk of class decertification either before or during trial,

the Court finds this factor to be neutral.

### e.  The Ability of the Defendants to Withstand a Greater Judgment

A settlement's fairness can also be assessed by examining a defendant's ability to pay a

judgment greater than the amount offered in a settlement.  *See PaineWebber*, 171 F.R.D. at 129.

Specifically, "evidence that the defendant will not be able to pay a larger award at trial tends to

---

[9]     Under the unforeseeable business exception to the Federal WARN Act, the employer must show that "the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." *Id.*  This exception "focuses on an employer's business judgment.  The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market.  The employer is not required, however, to accurately predict general economic conditions that also may affect demand for its products or services."  20 C.F.R. § 639.9(b)(2) (2011).  The NY WARN Act contains a similar defense.  *See* N.Y. COMP. CODES R. & REGS. tit. 12, 921-6.3 (Jan. 30, 2009).

[10]     Under the faltering business exception to the Federal WARN Act, the employer must show that it "was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business." *Id.*  This exception "applies to plant closings but not to mass layoffs and should be narrowly construed."  20 C.F.R. § 639.9(a) (2011).  The NY WARN Act contains a similar defense.  *See* N.Y. COMP. CODES R. & REGS. tit. 12, 921-6.2 (Jan. 30, 2009).

weigh in favor of approval of a settlement, since the 'prospect of a bankrupt judgment debtor

down at the end of the road does not satisfy anyone involved in the use of class action

procedures.'" *Id.* (quoting *In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y.

1985)). But the fact "that a defendant is able to pay more than it offers in settlement does not,

standing alone, indicate that the settlement is unreasonable or inadequate." *Id.* In the context of

an ongoing bankruptcy case, "this factor is of uncertain utility . . . as the defendant's ability to

pay more is clearly constrained." *WorldCom*, 347 B.R. at 147. At this stage, it is uncertain

whether the Debtor's estate has the requisite funds to pay all or a substantial portion of the full

value of the Class Members' alleged damages. Even considering the influx of cash from the

approved section 363 sale of substantially all of the Debtor's assets to Best Buy, it is not clear

how much money will be available for creditors after administrative expenses are paid. For these

reasons, this factor neither favors nor disfavors approval of the Settlement.

### f.  The Range of Reasonableness

The final two *Grinnell* factors are generally considered together "since both speak to the

fairness of the settlement's terms relative to the possible outcomes of litigation." *Id.* at 147–48.

The range of reasonableness "recognizes the uncertainties of law and fact in any particular case

and the concomitant risks and costs necessarily inherent in taking any litigation to completion."

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Moreover, "[d]ollar amounts [in class action

settlement agreements] are judged not in comparison with the possible recovery in the best of all

possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re

"Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) (citations omitted);

*see also Air Line Pilots Ass'n v. American Nat'l Bank and Trust Co. of Chicago (In re

Ionosphere Clubs, Inc.)*, 156 B.R. 414, 431 (S.D.N.Y. 1993) ("The weighing of a claim against

compensation cannot be . . . exact. Nor should it be, since an exact judicial determination of the

values in issue would defeat the purpose of compromising the claim . . . .").  On this point, the

*Grinnell* court observed that "there is no reason, at least in theory, why a satisfactory settlement

could not amount to a hundredth or even a thousandth part of a single percent of the potential

recovery."  495 F.2d at 455 n.2.

    In this case, the Court finds that in light of the circumstances discussed above, the

Settlement is reasonable.  The Settlement appropriately balances the competing interests of the

Class Members and the Defendants.  Both parties agreed that "litigation of the issues involved in

this litigation poses significant risk to each of the parties and that the Debtor's estate is likely to

incur significant legal exposure defending the Amended Complaint."  (Miller Decl. ¶ 10.)  The

parties arrived at this determination after exchanging discovery and thoroughly investigating the

facts and circumstances alleged in the Amended Complaint and those surrounding the

affirmative defenses raised by the Debtor in the Answer.  (*Id.*; Bloom Decl. ¶ 14.)  When

attorneys for both parties to a settlement believe that the agreement is fair, reasonable and

adequate, this factor weighs in favor of approval.  *See Worthington v. CDW Corp.*, No. C-1-03-

649, 2006 U.S. Dist. LEXIS 32100, at *12 (S.D. Ohio May 9, 2006) (citation omitted).

Moreover, as previously discussed, none of the Class Members objected to the Settlement or

opted-out.  This fact further demonstrates the reasonableness of the Settlement.  *See Wal-Mart*

*Stores*, 396 F.3d at 119.  Lastly, the amount paid to Class Members under the Settlement is

likewise reasonable because it adequately considers the risks and added costs associated with

fully litigating this action, as well as a bankrupt defendant's ability to pay.  (Motion ¶ 51; Miller

Dec. ¶ 15; Bloom Decl. ¶ 17.)  No party-in-interest contends otherwise.

### 3.  Substantive Fairness Under Bankruptcy Rule 9019

    A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable,

and in the best interests of the estate before it may approve a settlement.  *In re Drexel Burnham,*

*Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective Comm. for*

*Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).  Courts

have developed standards to evaluate if a settlement is fair and equitable, and identified factors

for approval of settlements based on the original framework announced in *TMT Trailer Ferry*.

*See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478

F.3d 452, 462 (2d Cir. 2007).  Those factors are interrelated and require the court to evaluate:

(1) the balance between the litigation's possibility of success and the settlement's future benefits;

(2) the likelihood of complex and protracted litigation, "with its attendant expense,

inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the

paramount interests of the creditors," including each affected class's relative benefits "and the

degree to which creditors either do not object to or affirmatively support the proposed

settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and

experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court

judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by

officers and directors"; and (7) "the extent to which the settlement is the product of arm's length

bargaining."  *Id.*  The burden is on the settlement proponent to persuade the Court that the

settlement is in the best interests of the estate.  *See* 8 NORTON BANKRUPTCY LAW AND PRACTICE

3D §167:2 (3d ed. 2011).

        The above factors "require the Court to engage in a similar analysis to that required under

Rule 23, save that the Court must now judge the Settlement from the perspective of the estate's

creditors." *WorldCom*, 347 B.R. at 149.  Based on the considerations discussed above and the

reasons that follow, the Court is satisfied that the Settlement is substantively fair under

Bankruptcy Rule 9019.  Here, the Settlement is in the best interests of creditors and the estate

because it caps the Debtor's risk at a relatively low percentage (17%) of their potential total

exposure.  The Settlement eliminates additional expenses and uncertainty in litigating this

matter.[11]  (Bloom Decl. ¶ 17.)  It is certainly possible that even if the Debtor prevailed after

litigation, all (or most) of the benefits associated with a victory at trial would be consumed by

fees and related expenses.  On this point, Debtor's counsel stated at the Fairness Hearing that

proving its affirmative defenses would necessitate an extensive fact-intensive inquiry, which

would undoubtedly increase professional fee and costs.  Also, fully litigating the action would

have distracted the Debtor from its efforts to file a plan and disclosure statement, leading to a

delay in making distributions to creditors.  At the Fairness Hearing, Debtor's counsel conceded

that it would be difficult to file a plan and disclosure statement with this matter left outstanding.

For these reasons, the Court concludes that the Settlement is substantively fair under Bankruptcy

Rule 9019.

### C.  Class Counsel's Compensation

#### 1.  Class Counsel's Request for Compensation is Procedurally Proper

Rule 23(h) specifies that "[i]n a certified class action, the court may award reasonable

attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

FED. R. CIV. P. 23(h).  In addition, Rule 23(h) sets out the following procedures that apply when

awarding attorneys' fees in a class action:

> (1)  A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets.  Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

> (2)  A class member, or a party from whom payment is sought, may object to the motion.

> (3)  The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

---

[11]    During the first interim fee period, Debtor's counsel billed the estate in the amount of $131,293.50 for time spent working on this matter.  (Case No. 11-10282, ECF Doc. # 227.)

> (4)   The court may refer issues related to the amount of the award to a
> special master or a magistrate judge, as provided in Rule 52(d)(2)(D).

FED. R. CIV. P. 23(h).

While Bankruptcy Rule 7054 does not explicitly incorporate Rule 54(d),[12] Collier notes

that Bankruptcy Rule 7023 incorporates Rule 23 "in its entirety." 10 COLLIER ON BANKRUPTCY ¶

7023.09[1] (16th ed. rev. 2011) ("[S]ince Rule 7023 incorporates Rule 23 in its entirety, Rule

54(d)(2) is applicable in bankruptcy, but only with respect to class actions.").   However, this

view is not uniform:

> Rule 54(d)(2) is not made applicable by Bankruptcy Rule 7054, so there is
> at least some question whether the reference to that rule in Rule 23 is

---

[12]      In its entirety, Rule 54(d)(2), the subsection of Rule 52(d) that governs attorney's fees, states:

(2) Attorney's Fees.

(A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable
expenses must be made by motion unless the substantive law requires those fees to be
proved at trial as an element of damages.

(B) Timing and Contents of the Motion. Unless a statute or a court order provides
otherwise, the motion must:
(i) be filed no later than 14 days after the entry of judgment;
(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to
the award;
(iii) state the amount sought or provide a fair estimate of it; and
(iv) disclose, if the court so orders, the terms of any agreement about fees for the
services for which the claim is made.

(C) Proceedings. Subject to Rule 23(h), the court must, on a party's request, give an
opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78.
The court may decide issues of liability for fees before receiving submissions on the value
of services. The court must find the facts and state its conclusions of law as provided in
Rule 52(a).

(D) Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge. By
local rule, the court may establish special procedures to resolve fee-related issues without
extensive evidentiary hearings. Also, the court may refer issues concerning the value of
services to a special master under Rule 53 without regard to the limitations of Rule
53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b)
as if it were a dispositive pretrial matter.

(E) Exceptions. Subparagraphs (A)-(D) do not apply to claims for fees and expenses as
sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927.

FED. R. CIV. P. 54(d)(2).

> applicable to Bankruptcy Rule 7023.  Further, Bankruptcy Rule 7008(b)
> requires that a request for attorney's fees be pleaded as a claim.  It is not
> clear that Rule 23(h) can override the procedures set forth in Bankruptcy
> Rule 7008(b).  Thus, if attorney's fees are going to be sought, the safer
> procedure is to set forth a separate claim requesting them.

Howard J. Steinberg, BANKRUPTCY LITIGATION § 5:176 (2d ed. 2007 & Supp. 2010).

Unfortunately, there is no caselaw that directly resolves this issue.

In any event, for the reasons that follow, the payment of attorneys' fees to Class Counsel

is procedurally appropriate under either standard.  Therefore, the Court will assess Class

Counsel's request for compensation in light of Rules 23(h) and 54(d)(2), as well as Bankruptcy

Rule 7008(b).

Although Class Counsel did not move for approval of fees pursuant to a *separate* motion,

*see* FED. R. CIV. P. 23(h)(1) and 54(d)(2)(A), the Motion specifies the amount of proposed

attorneys' fees sought, subject to Court approval.  (Motion ¶ 18.)  The Notice also purports to

"constitute[] notice to the Settlement Class of . . . (b) an award of attorneys' fees to Class

Counsel, defined below, of twenty-five percent (25%) of the Settlement Fund, minus the Service

Payments . . . ."  (Notice ¶ 2.)  The proposed fees were incorporated into the overall Settlement

and all Class Members were given the opportunity to opt-out of the Settlement after receiving the

Notice.  Over thirty days have passed since Class Members received the Notice and no

objections to the proposed attorneys' fees have been filed.  The other requirements of Rule

54(d)(2) have also been met because the Motion was filed prior to judgment and included the

amount of the proposed award.  *See* FED. R. CIV. P. 54(d)(2)(B).

The Court is also satisfied that Class Counsel has met the requirements of Bankruptcy

Rule 7008.  Under Bankruptcy Rule 7008(b), "[a] request for an award of attorney's fees shall be

pleaded as a claim in a complaint, cross-claim, third-party complaint, answer, or reply as may be

appropriate." FED. R. BANKR. P. 7008(b).  In the Amended Complaint, Class Counsel pleaded its

request for attorney fees' as an allowed claim against the estate.  (Amended Complaint ¶ 33(e).)

### 2.   Class Counsel's Requested Fees Are Reasonable

Class Counsel's requested fees also appear to be reasonable as required by Rule 23(h).

*See* FED. R. CIV. P. 23(h).  In the Second Circuit, courts may employ either the "lodestar" or

percentage-of-fund method to calculate attorneys' fees.  *Goldberger v. Integrated Res., Inc.*, 209

F.3d 43, 50 (2d Cir. 2000).  Under the lodestar method, "hours reasonably expended" are

multiplied by a "reasonable hourly rate."  *Wal-Mart Stores*, 396 F.3d at 121 (citing *Goldberger*,

209 F.3d at 47).  A "multiplier" to the base lodestar amount may be employed to increase the

award depending "on factors such as the riskiness of the litigation and the quality of the

attorneys."  *Id.*  While the percentage method "more faithfully adheres to market practice," the

lodestar method nonetheless "remains useful . . . as a 'cross check' on the reasonableness of the

requested percentage."  *Goldberger*, 209 F.3d at 50 (quoting *In re General Motors Corp. Pick-*

*Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 468, 820 (3d Cir. 1995)).  In the Second Circuit,

the trend is toward use of the percentage method.  *See Wal-Mart*, 396 F.3d at 121.  Regardless of

which method is employed, the proposed attorneys' fees must qualify as reasonable according to

six factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of

the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested

fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at

50 (citation and internal quotations omitted); *see also In re Union Carbide Corp. Consumer*

*Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989).

Here, Class Counsel is requesting attorneys' fees in the amount of $45,125.00, or twenty-five percent of the Settlement amount. [13] (*Id.* ¶ 32.) As stated, a percentage method may be employed to calculate these fees. The requested fees are also significantly less than the base lodestar amount of $79,118.50 (*Id.* ¶ 32), thereby satisfying the lodestar method's "cross-check."[14] *See Goldberger*, 209 F.3d at 50. The proposed fees also appear to satisfy the *Goldberger* criteria for reasonableness. Class Counsel has expended over 140 hours of work on this matter and has submitted detailed time records showing the precise allocation of time spent on each task. (Miller Decl., Ex. 2.) There is no indication that these time entries are unreasonable. Furthermore, class action litigation under the WARN Act is "highly specialized and particularly complex" (*Id.* ¶ 33) and the risks of litigation here appear to be significant because of the substantial time and expense required to conduct a trial. Finally, the fact that Class Counsel has "worked for over six months without compensation" on this case (*id.*) bolsters the argument that the requested fees are reasonable. For all of these reasons, the Court is satisfied that the requested fees are reasonable and are awarded to Class Counsel.

### III. CONCLUSION

For the reasons explained above, the Court approves the Settlement on a final basis. In doing so, the Court confirms its preliminary conclusions that the Notice was appropriate and that certification of the Settlement Class complies with the standards of Rule 23(a) and (b)(3). The Settlement is also both procedurally and substantively fair under Rule 23 and Bankruptcy Rule 9019.

---

[13]     Class Counsel incurred approximately $1,000 in expenses associated with litigating this case. (Miller Decl. ¶ 31.) However, Class Counsel is not seeking separate reimbursement for these expenses. (*Id.*)

[14]     Class Counsel projects an additional $10,000 in hourly fees for future matters. (*Id.* ¶ 30.)

Finally, the requested award of attorneys' fees is reasonable and appropriate in the circumstances.

A separate order will be entered approving the Settlement on a final basis.


Dated:          June 21, 2011
                New York, New York


                                    **_/s/Martin Glenn_**
                                    MARTIN GLENN
                                    United States Bankruptcy Judge